LIFE INSURANCE ILLUSTRATION
TRUSTMARK INSURANCE COMPANY
TRUSTMARK PROTECTOR
FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE (FORM NO. GUL-899)

PREPARED FOR: MANUEL P SOARES JR          CERTIFICATE NO: WT9714
MALE AGE 66 NONSMOKER                     OPTION A: LEVEL DEATH BENEFIT

END OF YEAR PROJECTED VALUES - NUMERIC SUMMARY

| Yr | Age | Premium Outlay | Guaranteed Cost of Insurance and Guaranteed Interest at 4.00% | | Current Cost of Insurance and Current Interest at 5.75% | | Average of Guaranteed and Current Cost of Insurance and 4.88% Interest | |
|---|---|---|---|---|---|---|---|---|
| | | | Cash Value | Death Benefit | Cash Value | Death Benefit | Cash Value | Death Benefit |
| 5 | 71 | 753 | 0 | 0 | 406 | 20,000 | 0 | 20,000 |
| 10 | 76 | 753 | 0 | 0 | 1,148 | 20,000 | 0 | 0 |
| 20 | 86 | 753 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4 | 70 | 753 | 0 | 0 | 116 | 20,000 | 0 | 20,000 |

The last year of death benefit under guaranteed assumptions will be certificate year 04, under current assumptions will be certificate year 16, and under average assumptions will be certificate year 10.

Current benefits and values are not guaranteed. The assumptions on which they are based are subject to change by the company. Actual results may be more or less favorable.

I have received a copy of this illustration and understand that any non-guaranteed elements illustrated are subject to change and could be either higher or lower. The agent has told me they are not guaranteed.

_____                                    _____
Owner/Applicant Signature                                            Date

I certify that this illustration has been presented to the applicant and that I have explained that any non-guaranteed elements illustrated are subject to change. I have made no statements that are inconsistent with the illustration.

*Chris Martin* (signature)                                    12 11 02
_____                                    _____
Agent Signature                                                      Date

Presented by: Trustmark Insurance Company
              400 Field Drive
              Lake Forest, IL 60045
              (800) 918-8877

This is an illustration, not a contract, and is not complete without all pages.

PAGE 5 OF

12 11 02

LIFE INSURANCE ILLUSTRATION
TRUSTMARK INSURANCE COMPANY
TRUSTMARK PROTECTOR
FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE (FORM NO. GUL-899)

PREPARED FOR: MANUEL P SOARES JR                          INITIAL SPECIFIED AMT: 20,000
MALE AGE 66 NONSMOKER                                     OPTION A: LEVEL DEATH BENEFIT

END OF YEAR PROJECTED VALUES - TABULAR DETAIL

| | | | GUARANTEED | | | NON-GUARANTEED | | |
| | | | GUARANTEED CHARGES AND GUARANTEED INTEREST OF 4.00% | | | CURRENT CHARGES AND CURRENT INTEREST OF 5.75% | | |
| Age | YR | Premium Outlay | Cash Value | Accumulated Value | Death Benefit | Cash Value | Accumulated Value | Death Benefit |
|---|---|---|---|---|---|---|---|---|
| 67 | 1 | 753 | 0 | 66 | 20,000 | 0 | 287 | 20,000 |
| 68 | 2 | 753 | 0 | 80 | 20,000 | 0 | 562 | 20,000 |
| 69 | 3 | 753 | 0 | 37 | 20,000 | 0 | 824 | 20,000 |
| 70 | 4 | 753 | 0 | 0 | 0 | 116 | 1,067 | 20,000 |
| 71 | 5 | 753 | 0 | 0 | 0 | 406 | 1,305 | 20,000 |
| 72 | 6 | 753 | 0 | 0 | 0 | 672 | 1,518 | 20,000 |
| 73 | 7 | 753 | 0 | 0 | 0 | 847 | 1,640 | 20,000 |
| 74 | 8 | 753 | 0 | 0 | 0 | 973 | 1,713 | 20,000 |
| 75 | 9 | 753 | 0 | 0 | 0 | 1,092 | 1,726 | 20,000 |
| 76 | 10 | 753 | 0 | 0 | 0 | 1,148 | 1,677 | 20,000 |
| 81 | 15 | 753 | 0 | 0 | 0 | 538 | 538 | 20,000 |
| 86 | 20 | 753 | 0 | 0 | 0 | 0 | 0 | 0 |
| 91 | 25 | 753 | 0 | 0 | 0 | 0 | 0 | 0 |
| 96 | 30 | 753 | 0 | 0 | 0 | 0 | 0 | 0 |
| 100 | 34 | 753 | 0 | 0 | 0 | 0 | 0 | 0 |

Non-guaranteed benefits and values are not guaranteed. The assumptions on which they are based are subject to change by the Company. Actual results may be more or less favorable.

This is an illustration, not a contract, and is not complete without all pages.

12 11 02                                                                        PAGE 6 OF 6

2. Provide com...te...and customer-focused sales and...
3. Engage in ac...e and fair competition.
4. Provide advertising and sales materials that are clear as to purpose and honest and fair as to content.
5. Provide for fair and expeditious handling of customer complaints and disputes.
6. Maintain a system of supervision and review that is reasonably designed to achieve compliance with these Principles of Ethical Market Conduct.

### IMSA Stands For Rigorous Assessments

When a company applies for membership in IMSA, it must first undertake its own internal assessment of its systems and programs that promote and maintain ethical behavior in the marketplace.

Second, the company undergoes an assessment by an outside, independent examiner such as an accountant, attorney, management or actuarial consultant qualified to assess that the company has met IMSA standards. These independent assessors must undergo training by IMSA and meet IMSA's established standards of knowledge and expertise.

The assessment and review process must be repeated every three years in order for a company to remain a member of IMSA. On a continuous basis, IMSA requires its member companies to commit to an ongoing process of developing implementing and monitoring procedures that help to determine whether policies being sold meet the customers' needs and financial objectives. The performance of these activities and adherence to the IMSA Principles and Code will result in continuous improvement in market conduct practices, both for the IMSA member company and the industry.

### Only IMSA Member Companies Are Allowed To Display The IMSA Logo.

Once a company becomes an IMSA member and is committed to our Code of Ethical Market Conduct, it is allowed to display the IMSA logo in its advertisements and sales materials. The IMSA logo stands for life insurance companies that commit to the high ethical standards in the marketplace.

Therefore, we urge you to look for the IMSA logo whenever considering the purchase of a life insurance, annuity or long-term care product.

To Find Out More About IMSA, Contact us at
1001 Pennsylvania Avenue, NW, Suite 500 South
Washington, DC 20004
(202) 624-2121

# BUYER SATISFACTION SURVEY

Dear Customer:

To help us maintain the level of service our customers deserve, would you please take a few minutes to complete this brief survey and drop it in the mail in the enclosed postage paid envelope.

Thank you in advance from your Trustmark Customer Service area. If you have any questions, please call us at (800) 918-8877.

Sincerely,
Customer Service Department

**NOTE:** Your name will not be added to any mailing lists if you answer this survey. You will not be called unless you request information or service.

-----

**Please detach and mail. Thank you for your time.**

1. Reasons I bought Life insurance (check all that apply):
   ___ Family protection/funeral expenses
   ___ Living Benefits (Terminal Illness, Long Term Care)
   ___ Savings for college
   ___ Savings for retirement
   ___ Other:_____

2. Did you cancel or change another life insurance policy to buy this one?
   ___ yes ___ no

3. How was your Trustmark policy purchased:
   ___ From a benefits counselor in an enrollment session at work
   ___ At a group meeting at my job
   ___ During enrollment of all my benefit choices
   ___ During my employer's benefits review session
   ___ From my spouse's counselor at work
   ___ Other: _____

4. Was your Trustmark Life Insurance explained when you enrolled?
   ___ yes ___ no

What questions, if any, do you have about your life insurance policy?

_____

_____

_____

_____

Policy Number: WT9714

Your Name: _____

Your Phone Number: _____ Best Time to Call: _____ AM ____ PM

Your Employer's Name: _____

# Trustmark
## INSURANCE COMPANY

PO BOX 7937 Lake Forest, Illinois 60045
Phone (847)615-1500  (800)918-3877

February 4, 2004

Jo-Ann Soares
29 Sowle St
New Bedford MA 02745

Re: Policy/Certificate #: WT9714
    Insured: Manuel P. Soares Jr.

Dear Mrs. Soares:

Thank you for your patience during the time that it has taken to review your claim under certificate WT9714.

A certificate is contestable during the first two years it is in force during the lifetime of the insured. This means that we have the right to verify the answers to any of the health questions indicated on the application when a claim is submitted within the first two years from the effective date of coverage (1/1/03).

When completing the application for insurance on October 29, 2002, you were asked a number of questions regarding the health of Manuel Soares including:

9. Is any person to be insured now disabled, been seen by a physician or treated in a medical facility, including a doctor's office, within the last 6 months for illness or disease (other than flu and colds)?

Your answer to this question was "No".

The medical information that we have received from Dr. Sawyer and Dr. Keith indicates that Manuel had been treated in the 6 months prior to the application for an illness or disease. Specifically, the records from Dr. Keith indicate that Manuel was seen on August 26, 2002 for follow-up of his moderate bilateral internal carotid artery stenosis and Bilateral Femoral Popliteal Occlusive Disease. Dr. Sawyers also saw him on July 29, 2002 for follow-up of his hemochromatosis and Dr. Sawyer ordered an echo to rule out dilated cardiomyopathy.

Based on this information, the correct answer to question 9 is "Yes."

Had the correct answer been given to question 9, you would have also been required to answer the following questions:

EXHIBIT C

12. Has any person to be insured:
   A. Had, within the past 5 years: heart disease, chest pains, high blood pressure; stroke; diabetes; cancer, tumor; kidney disease; blood disorder (excluding any testing for HIV antibodies); liver disease, or other known health impairments?
   B. Within the past 10 years received medical treatment or counseling, or participated in a rehabilitation, for alcohol or drug abuse?
   C. Seen a medical practitioner in the past 12 months for anything other than a regular physical examination?
12. If you answered "YES" to any question in 9, 10 or any part of 12, give details in question 19.

The medical history described above would have required an affirmative response to 12A. Had that question been answered truthfully, Certificate WT9714 would not have been issued. According to our underwriter, internal Carotid Artery Stenosis and Occlusive Disease are each automatic decline for coverage.

The inaccurate and incomplete responses to the questions in the application constitute a material misrepresentation, upon which our underwriter relied in making the decision to issue coverage. Due to the material misrepresentations, therefore, we must rescind this certificate from its date of issue and treat it as if it were void and never issued.

Please find enclosed a check, in the amount of $250.99, representing all premiums paid to date. No further monies will be accepted.

We regret that our decision could not have been more favorable. Our decision was based on the information in our file. If you have questions or additional information you wish us to review, you may contact us at 800-918-8877.

Sincerely,

Danette Elfering
Trustmark Voluntary Benefit Solutions

Cc: Platinum Worksite Benefits Ins NWB0NDZ3

# PERRY, HICKS, CROTTY AND DESHAIES, LLP
### ATTORNEYS AT LAW
### 388 COUNTY STREET
### NEW BEDFORD, MASSACHUSETTS 02740-4909

DANIEL C. PERRY
THOMAS P. CROTTY
MARC R. DESHAIES
———
BLAIR S. BAILEY
LAWRENCE D. HUNT
ELLYN H. HURD
AMY S. MELLO*

*ALSO ADMITTED IN R.I.

TELEPHONE
(508) 996-8291

TELECOPIER
(508) 997-2637

LEONARD E. PERRY
(1965-1999)

EDWARD D. HICKS
(1965-2002)

E-MAIL: info@perryhicks.net
www.perryhicks.net

May 12, 2004

Ms. Danette Elfering
Trustmark Voluntary Benefit Solutions
Trustmark Insurance Company
P.O. Box 7937
Lake Forest, IL 60045

Re: Insured: Manuel P. Soares, Jr.
    Policy/Certificate No. WT9714

Dear Ms. Elfering:

    This office represents JoAnn Soares, the owner and beneficiary under this policy.

    By letter dated February 4, 2004 you rescinded the certificate of insurance and refused payment of benefits. That decision was based on what you claimed were inaccurate and incomplete responses in the application.

    This policy was issued without medical examination of the insured. Under Massachusetts law the life insurer may not deny coverage based upon statements in the application where there is no medical examination, unless the insurer proves "that said statements were willfully false, fraudulent or misleading". M.G.L. c.175 §124, See Torres v. Fidelity and Guaranty Life, 34 Mass. App. Ct. 376 (1993). In the absence of such proof you are obliged to pay the death benefit.

    The statements, which you claim to be inaccurate, were, in fact, made in good faith based on the Soares' best memory and information. Under the circumstances, there is no basis for rescission.

    Please contact me at your first convenience to confirm that payment will be made in the face amount of $20,000. (Ms. Soares has not negotiated the check for $250.99, which you sent to her with your February 4, 2004 letter.) Thank you for your courtesy.

Very truly yours,

Thomas P. Crotty

lsf
cc: Ms. JoAnn Soares

EXHIBIT D

# *Trustmark*

INSURANCE COMPANY

PO BOX 7937 Lake Forest, Illinois 60045
Phone (847)615-1500  (800)918-8877

May 27, 2004

Thomas P. Crotty.
Perry, Hicks, Crotty and Deshaies, LLP
388 County St
New Bedford MA  02740-4909

Re: Policy/Certificate #: WT9714
    Insured: Mauuel P. Soares

Dear Mr. Crotty:

We are writing in response to your letter dated, May 12, 2004, regarding the rescission of the certificate for Manual Soares. The allegations that were made in your letter have been discussed with our legal department.

We acknowledge the current state of the law as stated in Torres v. Fidelity and Guaranty Life, and in M.G.L.c. 175 § 124, but we believe that the misrepresentation was willfully false, fraudulent, or misleading. The medical records received clearly document that Mr. Soares was treated prior to the application date of October 29, 2002 for follow-up of his moderate bilateral internal carotid artery stenosis, Bilateral Femoral Popliteal Occlusive Disease and Hemochromatosis. They further document that an Echo was ordered to rule out dilated cardiomycpathy. In addition, please note that Mrs. Soares answered Question 9 and 12 on the application and affirmed with her signature that Mr. Soares had not been seen by a physician or treated in a medical facility including a doctor's office, within the 6 months prior to the application for anything other than flu or cold.

The inaccurate and incomplete responses to the questions in the application constitute a material misrepresentation, upon which our underwriter relied in making the decision to issue coverage. Due to the material misrepresentations, therefore, we are standing by our rescission of this certificate from its date of issue and treating it as if it were void and never issued.

If you have further information regarding this issue, we will be pleased to review it. Our decision is based on the information available in our files. Trustmark reserves all its rights and defenses under the certificate and applicable laws.

If you have any questions, please feel free to contact us at (800) 918-8877, option 7.

Sincerely,

*[signature]*

Danette Elfering
Trustmark Voluntary Benefit Solutions

Cc: Platinum Worksite Benefits Ins NWB0NDZ3

EXHIBIT E

RECEIVED 6/11/04

# PERRY, HICKS, CROTTY AND DESHAIES, LLP

ATTORNEYS AT LAW
388 COUNTY STREET
NEW BEDFORD, MASSACHUSETTS 02740-4909

DANIEL C. PERRY
THOMAS P. CROTTY
MARC R. DESHAIES

BLAIR S. BAILEY
LAWRENCE D. HUNT
ELLYN H. HURD
AMY S. MELLO*

*ALSO ADMITTED IN R.I.

TELEPHONE
(508) 996-8291

TELECOPIER
(508) 997-2637

June 2, 2004

LEONARD E. PERRY
(1965-1999)

EDWARD D. HICKS
(1965-2002)

E-MAIL: info@perryhicks.net
www.perryhicks.net

Ms. Danette Elfering
Trustmark Voluntary Benefit Solutions
Trustmark Insurance Company
P.O. Box 7937
Lake Forest, IL  60045

Re: Insured: Manuel P. Soares, Jr.
    Policy/Certificate No. WT9714

Dear Ms. Elfering:

Thank you for your letter of May 27, 2004.

This letter is a demand for relief pursuant to Massachusetts G.L. c.93A, and is made on behalf of JoAnn Soares, the named beneficiary on the insurance policy WT9714 issued by you on the life of Manuel Soares.

JoAnn Soares submitted the policy application on October 29, 2002.

Among the information requested was whether the insured had been treated in the six months prior to the application for an illness or disease. Mrs. Soares answered the question "no", based upon information given to her by Manuel Soares. (In fact, as medical records show he had seen doctors for treatment in July and August 2002.) The policy was issued without medical examination of Mr. Soares.

Mr. Soares died on February 14, 2003.

By letter dated February 4, 2004 you denied coverage on the ground that the answer cited above was a material misrepresentation, which, if answered correctly, would have led the company to refuse the application.

By letter dated may 12, 2004 I advised you that, under Massachusetts law, where the company chooses to issue a policy without medical examination of the insured, you may not deny coverage based upon statements in the application unless you prove "that said statements were willfully false, fraudulent or misleading".

EXHIBIT F

In your letter of May 27, 2004 you acknowledge the law as cited above, but continue to deny coverage due to the material misrepresentations upon which you previously relied.

You have made no investigation, and have cited no additional facts to show that the statements in the application were not only incorrect, but were also "willfully false, fraudulent or misleading".

Your continued refusal to pay this claim, having failed to perform an investigation sufficient to form the basis of proof required by law, is an unfair claims settlement practice in violation of the following provisions of G.L. c.176D §3(9),

> "(d) refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> . . .
>
> (f) failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonable clear;
>
> (g) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"

These unfair claims settlement practices are also violations of the Massachusetts consumer protection law, G.L. c.93A, which provides for the award of costs, attorneys fees and multiple damages.

Under G.L. c.93A settlement of this claim is demanded by payment to JoAnn Soares in the amount of $20,000.00.

Thank you for your attention to this matter.

Very truly yours,

Thomas P. Crotty

lsf
cc: Ms. JoAnn Soares