UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12035-NMG

```
* * * * * * * * * * * * * * * * * *
                                 *
JO-ANN SOARES,                   *
                                 *
        Plaintiff,               *
                                 *
v.                               *
                                 *
TRUSTMARK INSURANCE COMPANY,     *
                                 *
        Defendant                *
                                 *
* * * * * * * * * * * * * * * * * *
```

## ANSWER AND COUNTERCLAIM OF DEFENDANT
## TRUSTMARK INSURANCE COMPANY

Now comes the Defendant Trustmark Insurance Company (hereinafter "Trustmark") and for Answer to the Complaint says:

Trustmark answers the specific allegations of the Complaint as follows:

### INTRODUCTORY UNNUMBERED PARAGRAPH

Because the allegations of the first sentence of the unnumbered introductory paragraph contain no allegations of fact but, rather, sets forth the nature of the claim of Plaintiff Jo-Ann Soares ("Soares"), no responsive pleading is required. To the extent that a responsive pleading is required or that the allegations of the first

1

sentence sets forth allegations of facts, Trustmark denies those allegations. As for the allegations of the second sentence of the unnumbered introductory paragraph, Trustmark admits that Trustmark issued a Certificate of Insurance to Soares on the life of Manuel P. Soares, Jr. under which Soares was the sole named beneficiary, but Trustmark denies that it is liable to pay Soares benefits under the Certificate of Insurance. Trustmark denies the allegations of the fourth sentence of the unnumbered introductory paragraph.  As for the allegations of the third sentence of the unnumbered introductory paragraph Trustmark admits that it denied payment of any benefits under the Certificate of Insurance but denies that balance of the allegations of that sentence.

## PARTIES

1.   On information and belief, Trustmark admits the allegations of the first paragraph of the Complaint.

2.   Admitted.

## FACTS

3.   Trustmark admits the first sentence of the allegations of paragraph one. Trustmark admits that the first page only of a copy of the application is attached to the Complaint as Exhibit A. Trustmark denies the balance of the allegations of paragraph three.

4. Because the allegations of the first sentence of paragraph four purport to construe a written document, which speaks for itself,

2

no responsive pleading is required.  To the extent that a responsive

pleading is required to the first sentence, Trustmark admits that

Trustmark required of Soares, in an application for life insurance

coverage on the life of her husband, to answer questions relative to,

among other things, the medical history and physical condition of her

husband including, but not limited to, the information asked for in

question nine of the application.  Trustmark denies the balance of

the allegations of paragraph 4.

5. Denied.

6. Trustmark admits that, in reliance on the answers Soares

provided to Trustmark in an application for life coverage Soares

signed on October 29, 2002, Trustmark issued to Soares a certificate

of life insurance numbered WT9714 ("Certificate WT9714") under a

group life insurance policy issued to the Group Policyholder Starmark

MI Trust. Trustmark also admits that the face amount of life

insurance coverage under Certificate WT9714 was $20,000.00. Trustmark

admits that premiums were paid for Certificate WT9714. Trustmark

admits that a copy of what appears to be Certificate WT9714 is

attached to the Complaint as Exhibit B. Trustmark is without

knowledge or information sufficient to form a belief as to the truth

of the balance of the allegations of paragraph 6.

7. Trustmark admits that it issued to Soares Certificate WT9714.

Trustmark is without knowledge or information sufficient to form a

belief as to truth of the balance of the allegations of paragraph 7.

8. Because the allegations of paragraph 8 purport to construe the words of a written document, which speaks for itself, and contain no allegations of fact but, rather, sets forth conclusions of law, no responsive pleading is required.  To the extent that a responsive pleading is required or that the allegations of paragraph 8 set forth allegations of facts, Trustmark denies those allegations.

9. Because the allegations of paragraph 9 purport to construe the words of a written document, which speaks for itself, and contain no allegations of fact but, rather, sets forth conclusions of law, no responsive pleading is required.  To the extent that a responsive pleading is required or that the allegations of paragraph 9 set forth allegations of facts, Trustmark admits that Soares in the named beneficiary in the application for Certificate WT9714, but otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9.

10. Trustmark is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10.

11. Trustmark admits that Soares made a claim for death benefits for Certificate WT9714. Trustmark is without knowledge or information sufficient to form a belief as to the truth of the balance of the allegations of paragraph 11.

12.  Trustmark admits that by a letter dated February 4, 2004,

4

and subsequent letters, it denied a claim Soares made for death

benefits for Certificate WT9714 and that a true copy of the February

4, 2004 letter is attached to the Complaint as Exhibit C. Trustmark

admits it sent to Soares a check in the amount of $250.99 for

reimbursement of premiums. Trustmark denies the balance of the

allegations of paragraph 12.

13.   Because the allegations of paragraph 13 purport to construe

the written contents of a document, no responsive pleading is needed

as the document speaks for itself. Furthermore, because the

allegations of paragraph 13 state conclusions of law rather than

allege facts, no responsive pleading is required. To the extent that

a responsive pleading is required or that the allegations of

paragraph 13 set forth allegations of facts, Trustmark denies those

allegations. And further answering, Trustmark states that Soares, in

application for Certificate WT9714, made material misrepresentations

and that, under the applicable law, Soares is barred for recovering

benefits under Certificate WT9714.

14. Because the allegations of paragraph 14 state conclusions of

law rather than allege facts, no responsive pleading is required. To

the extent that a responsive pleading is required or that the

allegations of paragraph 14 set forth allegations of facts, Trustmark

denies those allegations.

15.   Trustmark admits that it received from Soares' attorney a

5

letter dated May 12, 2004, a copy of which is attached to the
Complaint as Exhibit D, a document which speaks for itself. Trustmark
denies the balance of the allegations in paragraph 15. And further
answering, Trustmark denies that it owes Soares any death benefits
under Certificate WT9714.

16.   Trustmark admits that it sent a letter dated May 27, 2004
to Soares' lawyer and that a copy of that letter is attached to the
Complaint as Exhibit E.   Because the remaining allegations of
paragraph 16 purport to construe the written contents of a document
no responsive pleading is needed as the document speaks for itself.
Furthermore, because the remaining allegations of paragraph 16 state
conclusions of law rather than allege facts, no responsive pleading
is required. To the extent that a responsive pleading is required or
that the remaining allegations of paragraph 16 set forth allegations
of facts, Trustmark denies those allegations. And further answering,
Trustmark denies that it owes Soares any death benefits under
Certificate WT9714.

### COUNT I - BREACH OF CONTRACT

17. Trustmark repeats, reasserts and incorporates by reference
its responses to paragraphs 1 through 16 of the Complaint above.

18. Trustmark admits that premiums were paid for Certificate
WT9714. Because the remaining allegations of paragraph 18 state
conclusions of law rather than allege facts, no responsive pleading

6

is required. To the extent that a responsive pleading is required or that the remaining allegations of paragraph 18 set forth allegations of facts Trustmark denies those allegations.

19.   Denied.

### COUNT II - M.G.L. CHAPTER 93A

20. Trustmark repeats, reasserts and incorporates by reference its responses to paragraphs 1 through 20 of the Complaint above.

21.   Trustmark admits that it received a letter dated June 2, 2004 from the attorney for Soares, a copy of which is attached to the Complaint as Exhibit F. Trustmark admits that it responded to the letter from Soares' attorney dated June 2, 2004. Trustmark denies the balance of the allegations of paragraph 21. And further answering, Trustmark denies that Exhibit F to the Complaint satisfies the requirements of a written demand for relief under M.G.L. Chapter 93A, Section 9.

22.   Because the allegations of paragraph 22 state conclusions of law rather than allege facts, no responsive pleading is required. To the extent that a responsive pleading is required or that the allegations of paragraph 22 set forth allegations of facts, Trustmark denies those allegations.

23.   Trustmark denies that it engaged in any unfair claims settlement practices. Trustmark denies the balance of the allegations of paragraph 23.

## FIRST AFFIRMATIVE DEFENSE

Soares' Complaint fails to state a claim upon which relief can be granted because, among other grounds, Soares did not mail or deliver to Trustmark a letter which satisfies the requirements of a written demand for relief under M.G.L. Chapter 93A, Section 9, and Soares, in application for Certificate WT9714, made untrue statements which constituted material misrepresentations which  increased Trustmark's risk of loss, were made fraudulently or with the intent to deceive Trustmark, and were wilfully false, fraudulent or misleading.

## SECOND AFFIRMATIVE DEFENSE

1. In consideration of, and in reliance on a written application for insurance dated on or about October 29, 2002 from Soares, Trustmark issued to Soares Certificate WT9714 under a group life insurance policy Trustmark issued to Group Policyholder Starmark MI. Certificate WT9714 provided $20,000.00 insurance benefits to Soares as the beneficiary in the event of the death of her husband, Manuel P. Soares, Jr.

2. Soares signed the application after she answered "No" to the following questions regarding her husband:

> 9.    Is any person to be insured now disabled, or been seen by a physician or treated in a medical facility, including a doctor's office, withing the last 6 months for illness or disease (other than flu and colds)?

```
12.  Has any person to be insured:

     a.  Had, within the past 5 years: heart disease; chest
         pains; high blood pressure; stroke; diabetes; cancer;
         tumor; kidney disease; blood disorder(excluding any
         testing for Human Immunodeficiency Virus (HIV)
         antibodies); liver disease; lung disease; or other
         known health impairments?

     b.  Within the past 10 years received medical treatment or
         counseling, or participated in a rehabilitation
         program, for alcohol or drug abuse?

     c.  Seen a medical practitioner in the past 12 months for
         anything other than a regular physical examination?
```

Question 13 instructed Soares to give details to Trustmark for any

"Yes" responses to Questions 9 or 12, but no details were given

because she answered "No" to those questions.

3.  Soares also represented on the application near where she

signed that all statements and answers given in the application were

true and were made a part of any insurance issued. At the time of the

application for life insurance and within the 6 months prior to the

date of the application, however, Soares' husband and the proposed

insured, Manuel P. Soares, Jr., had been seen and/or treated by two

physicians for moderate bilateral internal carotid artery stenosis,

bilateral femoral popliteal occlusive disease, and hemochromatosis.

Within that time, one of the physicians for Manuel P. Soares, Jr.

ordered an echo to rule out dilated cardiomyopathy.  At the time she

signed the application, Soares was well aware of the nature of her

husband's physical condition or medical history.  Even if Soares did

not know the nature of her husband's physical condition or medical history at the time she signed the application, she learned it before Certificate WT9714 was issued on January 1, 2003 but, in violation of the law and Trustmark's rights, she did not advise Trustmark of the incorrect statements on the application.

4.  Had Soares answered truthfully to Questions 9 and 12 of the application, Trustmark would have discovered the true nature of the physical condition and medical history of Manuel P. Soares, Jr. which included, but was not limited to, the conditions set forth above, a "left cerebral hemisphere stroke" in 1999, a left basliar artery aneurysm in 1999, in 1999 a "left carotid endarterectomy with Dacron patch angioplasty" with a finding of greater than 90% stenosis at the origin of the left internal carotid artery with severe ulcerated plaque formation, a right carotid endarterectomy with dacron patch angioplasty in 1999 resulting in a question of tuberculosis, a biopsy of a left neck lymph node in 1999, evidence of pseudointimal hyperplasia in 2000, a repeat carotid duplex ultrasound in 2002 which demonstrated 50 to 79% stenosis in the common carotid artery bilaterally which was secondary to pseudointimal hyperplasia, moderate bilateral internal carotid artery stenosis, and in 2002 bilateral femoral popliteal occlusive disease. In 2000, the physician for Manuel P. Soares, Jr. warned him that his failure to attend to treatments for his hemochromatosis could cause heart failure,

diabetes, cirrhosis liver failure, and other severe consequences. In 2001, the physician for Manuel P. Soares, Jr. determined that his hemochromatosis was not being treated well due to his non-compliance in the treatment offered to him.

5. Accordingly, the representations Soares made on the application were not true and she knew they were not true.  The untrue statements constituted misrepresentations which were material and which increased Trustmark's risk of loss or were made fraudulently or with the intent to deceive Trustmark.  The statements were also wilfully false, fraudulent or misleading. Trustmark relied to its detriment on the misrepresentations by issuing to Soares Certificate WT9714. Had Trustmark known the truth about the medical history and physical condition of Manuel P. Soares, Jr., it would not have issued Certificate WT9714 to Soares. Soares knew that Trustmark would rely on her wilfully false, fraudulent or misleading statements.

6.  Because Soares made the aforesaid material misrepresentations with the intent to deceive Trustmark, or they increased risk of loss to Trustmark, or they were wilfully false, fraudulent or misleading, Certificate WT9714 is null and void and there is no obligation to Soares except to return the premiums paid thereon, which has been done.

11

### THIRD AFFIRMATIVE DEFENSE

Alternatively, pursuant to Fed.R.Civ.P. 8, if when Soares answered the questions in the application for Certificate WT9714, as described in detail above in the Second Affirmative Defense, she (1) was under a mistaken assumption that the physical condition and medical history or Manuel P. Soares, Jr. were not material to the risk Trustmark would assume, (2) otherwise did not understand or appreciate the significance of the questions posed to her, or (3) did not know about, did not reasonably suspect to exist, or reasonably did not understand the significance or severity of his physical history or medical condition, then the parties to Certificate WT9714 were under a mutual mistake of a material fact.  Trustmark was mistaken in that it assumed from the answers on the application that Manuel P. Soares, Jr. was not suffering from any medical or physical condition which was material to the insurance coverage risk it would take. Also, Soares did not know about or was mistaken about the need to disclose to Trustmark her husband's existing physical condition or medical history.  Accordingly, with the mutual mistake of such material facts, Certificate WT9714 is null and void and Trustmark has no obligation to Soares except to return the premiums paid thereon, which has been done.

### FOURTH AFFIRMATIVE DEFENSE

Soares, by her acts, statements and conduct, or by acts,

12

statements or conduct attributable to her, is estopped, equitably and otherwise, from asserting any claims against Trustmark.

## FIFTH AFFIRMATIVE DEFENSE

Soares, by her acts, statements and conduct, or by acts, statements or conduct attributable to her, including those for whose conduct she is responsible, is guilty of unclean hands and, therefore, is barred from recovery.

## SIXTH AFFIRMATIVE DEFENSE

Soares, by her acts, statements or conduct, or by acts, statements or conduct attributable to her, has violated the implied covenant of good faith and fair dealing and, therefore, is barred from recovery.

## SEVENTH AFFIRMATIVE DEFENSE

Soares, by her own acts, statements and conduct, or by acts, statements and conduct attributable to her, has waived any rights she might have against Trustmark.

## EIGHTH AFFIRMATIVE DEFENSE

Any acts, statements, omissions or misrepresentations, whether done intentionally or negligently, by anyone purporting to act for Trustmark were done outside the scope of that person's employment or agency and were done without authority, express or implied, from Trustmark, which has no liability for such acts, statements, omissions or misrepresentations.

## NINTH AFFIRMATIVE DEFENSE

The letter dated June 2, 2004, to Trustmark from Soares'
attorney, a copy of which is attached as Exhibit F to the Complaint,
fails to satisfy the requirements of a written demand for relief
under M.G.L. Chapter 93A, Section 9. Said letter does not meet the
detailed factual and legal requirements of M.G.L. Chapter 93A and,
therefore, does not constitute a demand letter pursuant to Chapter
93A. Accordingly, Soares' alleged claims for relief under Chapter 93A
and under M.G.L. Chapter 176D are barred.

## TENTH AFFIRMATIVE DEFENSE

Soares' claims should be dismissed because they are pre-empted
by Section 514(a) of the Employee Retirement Income Security Act of
1974 ("ERISA"), 29 U.S.C. §1144.

## ELEVENTH AFFIRMATIVE DEFENSE

Payment of life insurance benefits to the Soares under
Certificate WT9714 which Trustmark issued to Soares, where Soares has
not demonstrated that benefits are due, would constitute
discrimination with respect to Trustmark's other policyholders.

## TWELFTH AFFIRMATIVE DEFENSE

Payment of benefits to Soares under Certificate WT9714 which
Trustmark issued to Soares would violate the provisions of M.G.L.
Chapter 175, Section 182 because Soares is not entitled to benefits
under the terms of Certificate WT9714 and under the law.

14

## THIRTEENTH AFFIRMATIVE DEFENSE

Because Soares failed to satisfy all conditions precedent required to entitle her to benefits under Certificate WT9714, her claims are barred.

## FOURTEENTH AFFIRMATIVE DEFENSE

M.G.L. Chapter 176D does not provide for a private cause of action and, therefore, Soares' claims under Chapter 176D are barred.

WHEREFORE, the Defendant Trustmark Insurance Company prays that the Complaint of the Plaintiff Jo-Ann Soares be dismissed and that Trustmark be awarded its costs and attorney's fees in defense of this action and such other relief as this Court deems equitable and just.

## COUNTERCLAIMS

By way of Counterclaim, Defendant Trustmark Insurance Company hereby asserts the following claims against the Plaintiff Jo-Ann Soares.

## PRELIMINARY STATEMENT

This is a Counterclaim arising out of a life insurance certificate which Trustmark Insurance Company ("Trustmark") issued t o Jo-Ann Soares on the life of her husband, Manuel P. Soares, Jr., under which Soares was the beneficiary.  On October 29, 2002, Soares completed a life insurance application on which she made material misrepresentations to Trustmark about her husband's health.  If Trustmark had known the truth about her husband's poor health it

would not have issued the certificate. Accordingly, Trustmark seeks a declaratory judgment, pursuant to M.G.L. c. 231A, §1, and a rescission of the insurance certificate.

**COUNT ONE**

**(Declaratory Judgment Against Jo-Ann Soares - Misrepresentation)**

1. Plaintiff-in-Counterclaim Trustmark Insurance Company ("Trustmark") is organized under the laws of Illinois and has a principal place of business at 400 Field Drive, Lake Forest, Illinois 60045. Trustmark is engaged in the business of insurance, including life insurance which it sells in Massachusetts.

2. Defendant-in-Counterclaim Jo-Ann Soares ("Soares") is a citizen of the Commonwealth of Massachusetts and resides at 29 Sowle Street, New Bedford, Bristol County, Massachusetts. At all times relevant to this action Soares was the spouse of the proposed insured and now decedent Manuel P. Soares, Jr.

3. On or about October 29, 2002, Soares signed and submitted to Trustmark an application for life insurance coverage under which her husband, Manuel P. Soares, Jr. would be the insured and Soares would be the owner and the sole and 100% beneficiary in the event of the death of her husband. In consideration of, and in reliance on the statements in the application, Trustmark issued to Soares a certificate of life insurance, Certificate Number WT9714 ("Certificate WT9714"), under a group life insurance policy issued to

16

the Group Policyholder Starmark MI Trust. Trustmark issued

Certificate WT9714 on January 1, 2003 which was its effective date.

Under Certificate WT9714 Soares was the sole and 100% beneficiary at

the time of her husband's death on February 14, 2003, approximately

one and one-half months after the issuance of Certificate WT9714.

4.   In the written application for Certificate WT9714, Soares

made certain representations which she declared to be true and

complete and offered them for the purpose of inducing Trustmark to

issue Certificate WT9714 and to accept payment of premiums

thereunder. In reliance on the representations Soares made in the

written application, including representations regarding the health

of her husband, Manuel P. Soares, Jr., Trustmark issued Certificate

WT9714.

5.   Soares signed the application after she answered "No" to the

following questions regarding her husband:

9.   Is any person to be insured now disabled, or been seen by a
physician or treated in a medical facility, including a
doctor's office, withing the last 6 months for illness or
disease (other than flu and colds)?

12.  Has any person to be insured:

a.   Had, within the past 5 years: heart disease; chest
pains; high blood pressure; stroke; diabetes; cancer;
tumor; kidney disease; blood disorder(excluding any
testing for Human Immunodeficiency Virus (HIV)
antibodies); liver disease; lung disease; or other
known health impairments?

b.   Within the past 10 years received medical treatment or

17

counseling, or participated in a rehabilitation
program, for alcohol or drug abuse?

c.    Seen a medical practitioner in the past 12 months for
anything other than a regular physical examination?

Question 13 instructed Soares to give details to Trustmark for any

"Yes" responses to Questions 9 or 12, but no details were given

because she answered "No" to those questions.

6.    Soares also represented on the application near where she

signed that all statements and answers given in the application were

true and were made a part of any insurance issued. At the time of the

application for life insurance and within the 6 months prior to the

date of the application, however, Soares' husband and the proposed

insured, Manuel P. Soares, Jr., had been seen and/or treated by two

physicians for moderate bilateral internal carotid artery stenosis,

bilateral femoral popliteal occlusive disease, and hemochromatosis.

Within that time, one of the physicians for Manuel P. Soares, Jr.

ordered an echo to rule out dilated cardiomyopathy.  At the time she

signed the application, Soares was well aware of the nature of her

husband's above described physical condition and medical history.

7.    Had Soares answered truthfully to Questions 9 and 12 of the

application, Trustmark would have discovered the true nature of the

physical condition and medical history of Manuel P. Soares, Jr. which

included, but was not limited to, the conditions set forth above, a

"left cerebral hemisphere stroke" in 1999, a left basliar artery

18

aneurysm in 1999, in 1999 a "left carotid endarterectomy with Dacron patch angioplasty" with a finding of greater than 90% stenosis at the origin of the left internal carotid artery with severe ulcerated plaque formation, a right carotid endarterectomy with dacron patch angioplasty in 1999 resulting in a question of tuberculosis, a biopsy of a left neck lymph node in 1999, evidence of pseudointimal hyperplasia in 2000, a repeat carotid duplex ultrasound in 2002 which demonstrated 50 to 79% stenosis in the common carotid artery bilaterally which was secondary to pseudointimal hyperplasia, moderate bilateral internal carotid artery stenosis, and in 2002 bilateral femoral popliteal occlusive disease. Trustmark also would have learned that in 2000 the physician for Manuel P. Soares, Jr. warned him that his failure to attend to treatments for his hemochromatosis could cause heart failure, diabetes, cirrhosis liver failure, and other severe consequences. In 2001, his physician determined that his hemochromatosis not treated well due to patient non-compliance.

8. Accordingly, the representations Soares made on the application were not true and she knew they were not true. The untrue statements constituted misrepresentations which were material and which increased Trustmark's risk of loss or were made fraudulently or with the intent to deceive Trustmark. The statements she made also were wilfully false, fraudulent or misleading.

Trustmark relied to its detriment on the misrepresentations and statements by issuing to Soares Certificate WT9714. Had Trustmark known the truth about the medical history and physical condition of Manuel P. Soares, Jr., it would not have issued Certificate WT9714 to Soares. Soares knew that her statements were false, fraudulent or misleading and that Trustmark would rely on them.

9.   Because Soares made the aforesaid material misrepresentations with the intent to deceive Trustmark, or they increased risk of loss to Trustmark, or they were wilfully false, fraudulent or misleading, Certificate WT9714 is null and void and there is no obligation to Soares except to return the premiums paid thereon, which has been done. Soares has made a claim to Trustmark for the $20,000 in death benefits under Certificate WT9714.

10.   Even if Soares did not know the nature of her husband's physical condition or medical history at the time she signed the application on October 28, 2002, she learned it before Certificate WT9714 was issued on January 1, 2003 but, in violation of the law and Trustmark's rights, she did not advise Trustmark of the incorrect statements on the application.   Accordingly, Soares was under a continuing obligation to advise Trustmark of her husband's true physical condition or medical history before Certificate WT9714 was issued, but she failed to do so.

20

11.    Because of the aforesaid material misrepresentations and/or Soares' intent to deceive, and/or Soares' wilfully false, fraudulent or misleading statements, and/or the mutual mistake of the parties, Certificate WT9714 is void and Trustmark has no obligation thereunder except to return the premiums paid under Certificate WT9714.

12. An actual controversy exists between Trustmark and Soares, therefore, with respect to the rights and obligations of Trustmark and Soares under Certificate WT9714, especially the rights and obligations of Trustmark and Soares as to Soares' claim for benefits under Certificate WT9714 and the validity of Certificate WT9714. A declaratory judgment will terminate this controversy.

**COUNT TWO**

**(Declaratory Judgment Against Jo-Ann Soares - Mutual Mistake)**

13. Trustmark incorporates by reference and repeats the allegations of paragraphs 1 to 12 of its Counterclaim as if fully set forth herein.

14.    Alternatively, pursuant to Fed.R.Civ.P. 8, if when Soares answered the questions in the application for Certificate WT9714, as described in detail above, she (1) was under a mistaken assumption that the physical condition and medical history or Manuel P. Soares, Jr. were not material to the risk Trustmark would assume, (2)

21

otherwise did not understand or appreciate the significance of the questions posed to her, or (3) did not know about, did not reasonably suspect to exist, or reasonably did not understand the significance or severity of his physical history or medical condition, then the parties to Certificate WT9714 were under a mutual mistake of a material fact.

15. Trustmark was mistaken in that it assumed from the answers on the application that Manuel P. Soares, Jr. was not suffering from any medical or physical condition which was material to the insurance coverage risk it would take. Also, Soares did not know about or was mistaken about the need to disclose to Trustmark her husband's existing physical condition or medical history. Accordingly, with the mutual mistake of such material facts Certificate WT9714 is null and void.

16. An actual controversy exists between Trustmark and Soares, therefore, with respect to the rights and obligations of Trustmark and Soares under Certificate WT9714, especially the rights and obligations of Trustmark and Soares as to Soares' claim for benefits under Certificate WT9714 and the validity of Certificate WT9714. A declaratory judgment will terminate this controversy.

## COUNT THREE

### (Rescission Against Jo-Ann Soares)

17. Trustmark incorporates by reference and repeats the

22

allegations of paragraphs 1 to 16 of its Counterclaim as if fully set forth herein.

18. Because of the aforesaid material misrepresentations and/or Soares' intent to deceive, and/or Soares' wilfully false, fraudulent or misleading statements, and/or the mutual mistake of the parties, as described above, Certificate WT9714 is void and Trustmark has no obligation thereunder except to return the premiums paid under Certificate WT9714. Trustmark stands ready and willing to pay Soares the full amount of premiums paid on Certificate WT9714.

19. Since Soares made a claim to Trustmark for life insurance benefits under Certificate WT9714, she has continued to fail and refuse to agree to a rescission of Certificate WT9714 even though Trustmark has advised her of its position.

WHEREFORE, Plaintiff-in-Counterclaim Trustmark Insurance Company respectfully prays:

A.   That the Court declare that Certificate Number WT9714  is null and void, is rescinded, and is of no effect and that Trustmark has under no liability on Certificate WT9714, except for the return of premiums paid thereunder;

B. That the Court order a preliminary and, later, a permanent injunction against Defendant-in-Counterclaim Jo-Ann Soares and her agents, servants, successors, heirs or assigns enjoining them from selling, assigning, transferring or in any manner encumbering their

interest in Certificate WT0714;

    C.   That the Court order Soares to surrender and deliver Certificate WT9714 to Trustmark for cancellation;

    D.   That the Court grant Trustmark its reasonable attorneys' fees and costs for bringing this action;

    E.   That the Court order such other and further relief as appears appropriate and just to this Court.

                    TRUSTMARK INSURANCE COMPANY,
                    By its attorney,

                    Stephen A. Roach, BBO#542138
                    ROACH & WISE, LLP
                    31 State Street
October 11, 2004      Boston, MA  02109-2705
                    (617) 723-2800

## CERTIFICATE OF SERVICE

    I, Stephen A. Roach, Attorney for the Defendant Trustmark Insurance Company, hereby certify that on October 11, 2004, I served the within document by causing a copy of same to be mailed to the attorney for the Plaintiff by first class mail.

                    Stephen A. Roach